```
                    UNITED STATES DISTRICT COURT

                     DISTRICT OF NEW HAMPSHIRE


Keith Walter Arsenault,
     Claimant

     v.                                Civil No. 12-cv-434-SM
                                       Opinion No. 2014 DNH 007

Carolyn W. Colvin, Acting Commissioner,
Social Security Administration
     Defendant
```

**O R D E R**

Pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), claimant, Keith Arsenault, moves to reverse or vacate the Commissioner's decision denying his application for Social Security Disability Insurance Benefits under Title II of the Social Security Act, 42 U.S.C. § 423, and Supplemental Security Income Benefits under Title XVI of the Act, 42 U.S.C. §§ 1381-1383c.  The Commissioner objects and moves for an order affirming her decision.

For the reasons discussed below, claimant's motion is granted, and the Commissioner's motion is denied.

**Factual Background**

I.  Procedural History.

In 2010, claimant filed concurrent applications for Social Security Disability Insurance Benefits and Supplemental Security Income, alleging that he had been unable to work since September 21, 2009. That application was denied and claimant requested a hearing before an Administrative Law Judge ("ALJ").

In May of 2011, claimant, his attorney, and a vocational expert appeared before an ALJ, who considered claimant's application de novo. Three weeks later, the ALJ issued her written decision, concluding that claimant retained the residual functional capacity to perform the physical and mental demands of a range of sedentary work, including his past relevant work as a semiconductor assembler. In the alternative, the ALJ concluded that there is a significant number of jobs in the national economy that claimant can perform. Accordingly, the ALJ determined that claimant was not disabled, as that term is defined in the Act, at any time prior to the date of her decision.

Claimant then sought review of the ALJ's decision by the Appeals Council, which denied his request for review. Accordingly, the ALJ's denial of claimant's application for

benefits became the final decision of the Commissioner, subject to judicial review. Subsequently, claimant filed a timely action in this court, asserting that the ALJ's decision is not supported by substantial evidence and seeking a judicial determination that he is disabled within the meaning of the Act. Claimant then filed a "Motion for Order Reversing Decision of the Commissioner" (document no. 8). In response, the Commissioner filed a "Motion for Order Affirming the Decision of the Commissioner" (document no. 12). Those motions are pending.

## II. Stipulated Facts.

Pursuant to this court's Local Rule 9.1, the parties have submitted a statement of stipulated facts which, because it is part of the court's record (document no. 10), need not be recounted in this opinion. Those facts relevant to the disposition of this matter are discussed as appropriate.

**Standard of Review**

## I. "Substantial Evidence" and Deferential Review.

Pursuant to 42 U.S.C. § 405(g), the court is empowered "to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." Factual findings and credibility

determinations made by the Commissioner are conclusive if supported by substantial evidence. See 42 U.S.C. §§ 405(g), 1383(c)(3). See also Irlanda Ortiz v. Secretary of Health & Human Services, 955 F.2d 765, 769 (1st Cir. 1991). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938). It is something less than a preponderance of the evidence, so the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence. Consolo v. Federal Maritime Comm'n., 383 U.S. 607, 620 (1966). See also Richardson v. Perales, 402 U.S. 389, 401 (1971).

II. The Parties' Respective Burdens.

An individual seeking Social Security disability benefits is disabled under the Act if he or she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). See also 42 U.S.C. § 1382c(a)(3). The Act places a heavy initial burden on the claimant to establish the existence of a disabling impairment. See Bowen v. Yuckert, 482

U.S. 137, 146-47 (1987); Santiago v. Secretary of Health & Human Services, 944 F.2d 1, 5 (1st Cir. 1991). To satisfy that burden, the claimant must prove, by a preponderance of the evidence, that his impairment prevents him from performing his former type of work. See Gray v. Heckler, 760 F.2d 369, 371 (1st Cir. 1985); Paone v. Schweiker, 530 F. Supp. 808, 810-11 (D. Mass. 1982). If the claimant demonstrates an inability to perform his previous work, the burden shifts to the Commissioner to show that there are other jobs in the national economy that he can perform. See Vazquez v. Secretary of Health & Human Services, 683 F.2d 1, 2 (1st Cir. 1982). See also 20 C.F.R. §§ 404.1512(f) and 416.912(f).

In assessing a disability claim, the Commissioner considers both objective and subjective factors, including: (1) objective medical facts; (2) the claimant's subjective claims of pain and disability, as supported by the testimony of the claimant or other witnesses; and (3) the claimant's educational background, age, and work experience. See, e.g., Avery v. Secretary of Health & Human Services, 797 F.2d 19, 23 (1st Cir. 1986); Goodermote v. Secretary of Health & Human Services, 690 F.2d 5, 6 (1st Cir. 1982). Ultimately, a claimant is disabled only if his:

> physical or mental impairment or impairments are of
> such severity that he is not only unable to do his
> previous work but cannot, considering his age,

> education, and work experience, engage in any other
> kind of substantial gainful work which exists in the
> national economy, regardless of whether such work
> exists in the immediate area in which he lives, or
> whether a specific job vacancy exists for him, or
> whether he would be hired if he applied for work.

42 U.S.C. § 423(d)(2)(A). See also 42 U.S.C. § 1382c(a)(3)(B).

With those principles in mind, the court reviews claimant's motion to reverse and the Commissioner's motion to affirm her decision.

## Background - The ALJ's Findings

In concluding that claimant was not disabled within the meaning of the Act, the ALJ properly employed the mandatory five-step sequential evaluation process described in 20 C.F.R. §§ 404.1520 and 416.920. Accordingly, she first determined that claimant had not been engaged in substantial gainful employment since his alleged onset of disability: September 21, 2009. Admin. Rec. at 21. Next, she concluded that claimant suffers from the following severe impairments: "affective disorder, obesity, status post fixation of the right ankle, status post brain aneurysm, and obstructive sleep apnea." Id. at 22. Nevertheless, the ALJ determined that those impairments, regardless of whether they were considered alone or in combination, did not meet or medically equal one of the

impairments listed in Part 404, Subpart P, Appendix 1. Id. at 22-23.

Next, the ALJ concluded that claimant retained the residual functional capacity ("RFC") to perform the exertional demands of a range of sedentary work.[1] She noted, however, that claimant "must avoid temperature extremes, wetness, hazards, and climbing ladders, ropes, or scaffolds. He is limited to routine, repetitive tasks in an environment where tasks are performed in a solitary manner. He cannot have face-to-face interaction with the public and can have only occasional, brief, superficial, interactions with co-workers and supervisors." Admin. Rec. at 23. Despite those restrictions, however, the ALJ concluded that claimant retained the ability to perform his past relevant work as a semiconductor assembler. Id. at 26.

---

[2] "RFC is what an individual can still do despite his or her functional limitations. RFC is an administrative assessment of the extent to which an individual's medically determinable impairment(s), including any related symptoms, such as pain, may cause physical or mental limitations or restrictions that may affect his or her capacity to do work-related physical and mental activities. Ordinarily, RFC is the individual's maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis, and the RFC assessment must include a discussion of the individual's abilities on that basis." Social Security Ruling ("SSR"), 96-8p, Policy Interpretation Ruling Titles II and XVI: Assessing Residual Functional Capacity in Initial Claims, 1996 WL 374184 at *2 (July 2, 1996) (citation omitted).

Finally, the ALJ also considered whether there were any other jobs in the national economy that claimant might perform. Relying upon the testimony of a vocational expert, the ALJ concluded that, notwithstanding claimant's exertional and non-exertional limitations, he "is capable of making a successful adjustment to other work that exists in significant numbers in the national economy." Id. at 27. As examples of such jobs, the ALJ identified document preparer, addresser, sorter, and telemarketer. In light of those findings, the ALJ concluded that claimant was not "disabled," as that term is defined in the Act, at any time from his alleged onset date through the date of her decision.

## Discussion

Claimant challenges the ALJ's decision on three grounds, asserting that she erred by: (1) failing to give appropriate weight to the medical opinions of his treating sources; (2) failing to properly assess his credibility; and (3) relying upon flawed testimony by the vocational expert. Because the court agrees that the ALJ did not adequately explain her decision to substantially discount the medical opinions of claimant's treating/examining sources, it need only address that issue.

There is, of course, no per se rule requiring the ALJ to give greater weight to the opinions of a treating physician than those of a consulting physician. See Arroyo v. Secretary of Health & Human Services, 932 F.2d 82, 89 (1st Cir. 1991); Tremblay v. Secretary of Health & Human Services, 676 F.2d 11, 13 (1st Cir. 1982). Nevertheless, in discussing the weight that will be ascribed to the opinions of treating sources, the pertinent regulations provide:

> Generally, we give more weight to opinions from [the claimant's] treating sources, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of [the claimant's] medical impairment(s) . . . When we do not give the treating source's opinion controlling weight, we apply the factors listed [in this section] in determining the weight to give the opinion. <u>We will always give good reasons</u> in our notice of determination or decision <u>for the weight we give [the claimant's] treating source's opinion</u>.

20 C.F.R. § 404.1527(c)(2) (emphasis supplied). See also Social Security Ruling, Policy Interpretation Ruling Titles II and XVI: Giving Controlling Weight to Treating Source Medical Opinions, SSR 96-2p, 1996 WL 374188 (July 2, 1996) (when the ALJ renders an adverse disability decision, his or her notice of decision "must contain specific reasons for the weight given to the treating source's medical opinion, supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the

treating source's medical opinion and the reasons for the weight.").

In other words, giving "good reasons" for discounting the opinions of treating sources means providing "specific reasons" that will allow "subsequent reviewers [to know] . . . the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." SSR 96-2P, 1996 WL 374188, at *5 (1996). Accordingly, when no such specific reasons are given, remand is appropriate if the failure renders meaningful review impossible. See Lord v. Apfel, 114 F. Supp. 2d 3, 14 (D.N.H. 2000).

Here, the ALJ failed to adequately explain her decision to afford only "some weight" to the opinions from claimant's treating/examining sources - Dr. Kolada (a clinical psychologist) and Dr. Carvalho (claimant's treating psychiatrist) - noting only that those opinions "appear to contain inconsistencies with the medical record as well as their own treatment notes, and thus are rendered less persuasive." Admin. Rec. at 24. Importantly, the ALJ failed to discuss (or even identify) those apparent inconsistencies. Plainly, more is required.

The substance of the opinions rendered by Dr. Kolada and Dr. Carvalho is discussed at length in the parties' joint statement of material facts (document no. 10, at 6-10) and need not be recounted. It is sufficient to note that both doctors join in opining that: (1) claimant is not a malingerer; (2) his GAF scores suggest a serious level of impairment in his ability to perform activities of daily living; (3) he is incapable of working in even a low-stress environment; and (4) he has "markedly limited" functioning (defined as limitations that "effectively preclude the individual from performing the activity in a meaningful manner") in numerous areas, including the ability to perform tasks within a schedule, the ability to accept instruction, the ability to work with others without distraction, the ability to complete a normal workweek without an unreasonable number and length of rest periods, and the ability to be punctual within customary tolerance. See Admin. Rec. at 365-73 and 421-28. Dr. Carvalho went even further, opining that claimant was "markedly limited" in several other categories as well. Id. at 424-26.

If even a few of those medical opinions are credited as true, claimant would certainly appear to be disabled. See, e.g., Admin. Rec. at 64-65 (vocational expert's opinion that an individual who could have only brief and superficial contact with

other employees, or an individual who had difficulty adhering to a schedule and would be late to work at least two days a week, would be incapable of substantial gainful employment). Consequently, the ALJ's failure to adequately support her decision to discount the professional opinions of those treating sources cannot be said to have been harmless.

Finally, it probably bears noting that the ALJ afforded "greater weight" to the opinions offered by the non-treating psychologist, Dr. Edouard Carignan (an SSA consultant who, as the parties note, gave no indication that he reviewed any of claimant's treatment records. See Joint Statement of Facts at 11). Several of Dr. Carignan's opinions are, however, inconsistent with his own observations. For example, he noted that claimant "misunderstood the direction in one portion of the MMSE [Mini-mental state examination]," yet he concluded that claimant would have "no difficulty" in understanding and remembering instructions. Compare Admin. Rec. at 345 with Admin. Rec. at 347. Similarly, Dr. Carignan's observations about claimant feeling overwhelmed by caring for his nephews and his obsessive cleaning and aggressive demeanor during those periods, Admin. Rec. at 346, would seem to be at odds with his conclusion

that claimant has no difficulty in social functioning or in managing stress, Admin. Rec. at 347.[2]

The salient point is this: the ALJ substantially discounted, without adequate explanation, the medical opinions of two examining/treating sources on grounds that those opinions contained (undisclosed) inconsistencies with the medical record. Yet, she embraced the opinion of a non-treating medical source who did not review claimant's medical records and whose opinions are demonstrably inconsistent with some of his own observations. The ALJ's written decision simply provides inadequate explanation for the reasons she credited (or discredited) those medical opinions in the manner that she did.

## Conclusion

For the foregoing reasons, the court necessarily concludes that the ALJ's adverse disability determination is not supported by substantial evidence. Claimant's motion to reverse the decision of the Commissioner (document no. 8) is, therefore, granted to the extent he seeks a remand for further proceedings.

---

[2] Although Dr. Carignan administered the mini-mental status exam (MMSE), he did not perform any psychological testing on claimant. Admin. Rec. at 345. Consequently, when the ALJ notes that she afforded his opinions greater weight because they were based on "testing and examination of the claimant," the court assumes that she is referring to claimant's performance on that MMSE.

The Commissioner's motion to affirm her decision (document no. 12) is denied.

Pursuant to sentence four of 42 U.S.C. § 405(g), the decision of the ALJ dated June 16, 2011 is vacated and this matter is hereby remanded for further proceedings consistent with this order. The Clerk of Court shall enter judgment in accordance with this order and close the case.

**SO ORDERED.**

_____
Steven J. McAuliffe
United States District Judge

January 16, 2014

cc: Eddy P. Pierre, Esq.
    Brenda M. G. Hallisey, Esq.
    Robert J. Rabuck, Esq.